**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 93-cr-00567-BLOOM**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JORGE ELIECER BUENO-SIERRA,

    Defendant.
_____/

**ORDER ON DEFENDANT'S PETITION UNDER 3582(c)(1)(A)**

**THIS CAUSE** is before the Court upon Defendant's Petition Under 3582(c)(1)(A) Motion Seeking a Reduction of His Sentence Based on the COVID-19 Influenced Grants of Sentence Reduction Using 3582(c)(1)(A) with Waiver of Exhaustion Waiting Period, ECF No. [361] ("Motion"), filed on April 21, 2020. The Government filed a response, ECF No. [365] ("Response"). The Court has carefully reviewed the Motion and Response, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

A federal grand jury indicted Defendant in a six-count superseding indictment charging Defendant with conspiracy to import cocaine in violation of 21 U.S.C. § 952(a) (Count 1); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 2); importation of cocaine in violation of 21 U.S.C. § 952(a) and 960(a)(1), (b) (Counts 3 and 5); and possession with intent to distribute cocaine in violation of 21 U.S.C. § 952(a) and 960(a)(1), (b) (Counts 4 and 6). ECF No. [57]. On October 7, 1994, Defendant was convicted of Counts 1

through 4. ECF No. [162].[1] At his sentencing, the Court sentenced Defendant to a term of life in prison as to Counts 1-4, to be served concurrently. ECF No. [214]. at 114; ECF No. [192]. Defendant's conviction and sentence were affirmed on appeal by the Eleventh Circuit. *United States v. Bueno-Sierra*, 99 F.3d 375, 380 (11th Cir. 1996). The United States Supreme Court denied certiorari on March 31, 1997. *Bueno-Sierra v. United States*, 117 S. Ct. 1347, 1347 (1997). In the years since Defendant's convictions became final, Defendant filed numerous unsuccessful petitions for post-conviction relief and numerous unsuccessful motions to reduce his sentence. Defendant is currently housed at USP Atlanta, in Atlanta, Georgia.

In the instant Motion, Defendant requests a reduction of his sentence in the form of immediate release based upon extraordinary and compelling circumstances of the COVID-19 public health crisis. In pertinent part, Defendant contends that the COVID-19 outbreak at USP Atlanta, combined with his age and specific health conditions—including, dermatophytosis of nail, type 2 diabetes, right hip replacement, gastroesophageal reflux disease ("GERD"), primary osteoarthritis of right hip, disorder of facial nerve, hypertension, cataracts, and continuous shoulder pain—put him at risk of suffering severe complications if he were to contract COVID-19. In addition, Defendant argues that the Court should waive the exhaustion requirement in his case because his counselor has abandoned the prison facility. As a result, Defendant requests that he be released from prison to his family as soon as possible. The Government opposes Defendant's request for release for failure to exhaust administrative remedies, and because Defendant's medical conditions do not present extraordinary and compelling reasons.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting

---

[1] The Government later dismissed Counts 5 and 6.

more confirmed cases of COVID-19 and resulting deaths than any other country, with more than 1,345,000 confirmed cases and almost 90,000 reported deaths as of May 12, 2020.[2] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning, and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those

---

[2] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 12, 2020).

3

prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.   LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—

4

> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find

that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

With these standards in mind, the Court considers Defendant's Motion.

### III.    DISCUSSION

Defendant's Motion requests that he be immediately released based on his underlying medical conditions, which he contends place him within the most at-risk demographic for contracting a serious and potentially fatal case of COVID-19. The Government opposes Defendant's Motion, arguing that the Court lacks the authority to modify his sentence because he has deliberately failed to exhaust his administrative remedies, that the BOP has modified its operating procedures in order to effectively respond to the COVID-19 pandemic and that it has the capacity to properly address any outbreaks among inmates housed in federal facilities. Moreover, the Government maintains that the absence of any extraordinary or compelling circumstances and the danger Defendant poses to the community further warrant denial of his request.

As an initial matter, Defendant has admittedly failed to exhaust his administrative remedies with the BOP. The fact that his counselor has apparently abandoned the prison facility does not excuse Defendant from this requirement. As such, this failure to exhaust the BOP remedies alone is a sufficient basis to deny the requested relief. Nevertheless, even if Defendant had satisfied the

exhaustion requirement, he has failed to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification or that extraordinary and compelling circumstances exist.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of life imprisonment was appropriate in this case, taking into consideration these § 3553(a) considerations. And aside from his stated medical conditions, Defendant has not provided any additional bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago."). As such, the Court concludes that the § 3553(a) factors do not warrant a modification of Defendant's sentence at this time.

In addition, with regard to the "extraordinary and compelling reasons" test, Defendant is seventy-two years old and suffers from several health conditions, including in pertinent part, diabetes and hypertension. CDC guidance indicates that individuals with the following conditions are at a higher risk of contracting severe illness due to COVID-19: moderate to severe asthma, chronic lung disease, diabetes, serious heart conditions, chronic kidney disease, severe obesity,

chronic liver disease, immunocompromised, age over sixty-five, and living in a nursing home or long-term care facility.[3] The Court is sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that his age and two of his medical conditions—*i.e.*, diabetes and hypertension—are risk factors that are designated in the CDC's guidance. However, Defendant does not allege that his health conditions are significantly deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Moreover, from the medical records attached to the Motion, it appears that Defendant's medical conditions are being managed in custody.

Defendant appears to contend further that the conditions at USP Atlanta support his request for immediate release. Defendant asserts that nine (9) inmates have tested positive for COVID-19 and that one (1) staff member has died. The Government concedes that the BOP website indicates that seven (7) inmates and six (6) staff have tested positive for the virus, and that one (1) staff member is reported to have died of COVID-19. Currently, according to the BOP, active confirmed

---

[3] *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Apr. 15, 2020).

cases at USP Atlanta include one (1) inmate out of a total inmate population of 1,983 and six (6) staff.[4] However, as the Memorandum makes clear, the intention in increasing the availability of home confinement is to target facilities like FCI Oakdale, Danbury, and Elkton, at which COVID-19 is materially affecting operations. There is no indication that USP Atlanta is similarly situated to these facilities (other than being a prison), nor has there been an explicit finding that COVID-19 is materially affecting operations at that facility. The Defendant has failed to demonstrate that extraordinary and compelling reasons exist to support his request for release.[5]

Based on the discussion above, the Court concludes that Defendant has failed to demonstrate that a sentence modification is warranted in this case.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [361]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 14, 2020.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record

Jorge Eliecer Bueno-Sierra
43039-004

---

[4] *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed May 13, 2020). The BOP website also lists that fifteen (15) inmates and three (3) staff have recovered at USP Atlanta.

[5] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release, the Court does not address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).

Atlanta-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 150160
Atlanta, Georgia 30315